IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCOTT DETGEN, by his next friend, <br> L.C. DETGEN, <br><br> JUANITA BARRAZA, by her next friend, <br> YOLANDA VILLAREAL, <br><br> Plaintiffs, <br><br> vs. <br><br> THOMAS SUEHS, in his official capacity <br> as Executive Commissioner, TEXAS <br> HEALTH AND HUMAN SERVICES <br> COMMISSION, <br><br> Defendant. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.  3:11-CV-02974 |

**COMPLAINT**

**I.  INTRODUCTION**

1. Plaintiffs Scott Detgen and Juanita Barraza are young adults with significant disabilities who reside in Texas.  Both Scott and Juanita are eligible Medicaid beneficiaries who, because of their functional limitations, require an item of medical equipment known as an overhead lift.  Scott needs this type of patient lift to transfer from his bed to the floor, into and out of the bathtub, and to a stair lift that is used to get to and from the second floor of his home.  Juanita requires this same lift to transfer her from her bed to her wheelchair and to and from the bath.

2. As Medicaid beneficiaries, Scott and Juanita are entitled to medically necessary durable medical equipment ("DME") through the home health benefit of the Texas Medicaid program.  Despite their well-documented medical need for this specific item of DME, Defendant Thomas Suehs, acting in his official capacity as Executive Commissioner of the Texas Health

and Human Services Commission ("HHSC"), denied Scott and Juanita the DME to which they are entitled.

3. Texas Medicaid covers the type of lift both Plaintiffs require, but limits such coverage to Medicaid beneficiaries under 21 years of age. Defendant's denial of this medically necessary DME for Plaintiffs resulted from the application of Defendant's policy that excludes overhead lifts from coverage for adult beneficiaries. No medical rationale or medical evidence justifies this age-based exclusion of overhead lifts.

4. Contrary to relevant provisions of Title XIX of the Social Security Act ("Medicaid Act"), its implementing regulations, and prior decisions of the courts, *e.g. Fred C. v. Texas Health and Human Serv. Comm'n,* 988 F. Supp. 1032 (W.D. Tx. 1997), *affirmed per curiam,* 167 F. 3d. 537 (5th Cir. 1988), Defendant Suehs categorically excludes overhead lifts from Medicaid coverage for beneficiaries who are 21 years of age or older, regardless of their medical need for this equipment.

5. Defendant's policy, which excludes the type of patient lift that Scott and Juanita require due to the severity of their disabilities also violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101*et seq.*

6. This case is brought to enjoin Defendant from applying unlawful rules and policies that create such exclusions of medically necessary DME and to secure the prospective relief necessary to ensure that Scott and Juanita receive the medically necessary overhead lifts to which they are entitled.

## II. JURISDICTION AND VENUE

7. This action arises under Title XIX of the Social Security Act and the Due Process Clause of the United States Constitution. The Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 1331, which gives district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States and 28 U.S.C. § 1343(a) (3) and (4), which grants jurisdiction over suits authorized by 42 U.S.C. § 1983 to redress the deprivation under color of state law of any rights, privileges, or immunities guaranteed by the Constitution or by acts of Congress.

8. This action also arises under Title II of the ADA, 42 U.S.C. §12101 *et seq.*, which confers jurisdiction to remedy disability-based discrimination by public entities, such as programs of state government.

9. This Court has jurisdiction over Plaintif's claim for declaratory relief pursuant to 28 U.S.C. § 2201. Injunctive relief is authorized by 28 U.S.C. § 2202 and 42 U.S.C. § 1983.

10. Venue is appropriate in the United States District Court, Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this district.

### III. PARTIES

11. Plaintiff, Scott Detgen is 27 years old and resides in Rockwall County, Texas. Mr. Detgen receives Supplemental Security Income ("SSI") due to his disability and is categorically-eligible for the Texas Medicaid program. He is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. §12131(2). Mr. Detgen appears in this litigation through his parent and next friend, L.C. Detgen.

12. Plaintiff, Juanita Barraza is 44 years old and resides in Dallas County, Texas. Ms. Barraza receives SSI due to her disability and is categorically eligible for the Texas Medicaid program. She is a qualified individual with a disability within the meaning of the ADA, 42

U.S.C. §12131(2). Ms. Barraza appears in this litigation through her parent and next friend, Yolanda Villareal.

13. Defendant Thomas Suehs is the Executive Commissioner of HHSC, the single-state agency for the Texas Medicaid program. 42 U.S.C. § 1396a(a)(5). In his capacity as Executive Commissioner of HHSC, Mr. Suehs is ultimately responsible for ensuring that the operation of the Texas Medicaid program fully complies with the requirements of the Medicaid Act, its implementing regulations, and the U.S. Constitution. The state agency represented by Defendant is a public entity within the meaning of Title II of the ADA. Defendant Suehs is sued solely in his official capacity for prospective relief.

### IV. LEGAL FRAMEWORK OF THE MEDICAID PROGRAM

14. In 1965, Congress enacted Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-2 to establish the Medicaid program. Medicaid is a program designed to provide medically necessary health care to certain low income families and individuals with disabilities. The Medicaid program operates through joint federal and state funding. At present, the federal government pays approximately 60% of Texas Medicaid's program costs.

15. As stated in the Medicaid Act, the purpose of the program is to enable states "to furnish…rehabilitation and other services to help such families and individuals attain or retain the capability for independence or self-care." 42 U.S.C. § 1396-1. State participation in the Medicaid program is voluntary, but Texas, like all states, has elected to participate.

16. Having elected to participate in the Medicaid program, Texas must develop a state plan that complies with the federal statute and federal regulations governing the program. 42 U.S.C. §1396a.

17. Pursuant to the Medicaid Act, all participating states must include within their state plans the following broad categories of services: inpatient and outpatient hospital care; physician services; laboratory and x-rays; nurse-midwife services; rural health clinic services; prenatal care; family planning services; nursing facility services; **home health services (including medical equipment, appliances, and supplies);** pediatric and nurse practitioner services; early and periodic screening, diagnosis, and treatment services ("EPSDT") for beneficiaries under the age of twenty-one (21); vaccines for children; and federally qualified health centers. *(Emphasis added)* 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(10)(D), 1396d(a); 42 C.F.R. § 440.70(b)(3).

18. Medical equipment, also referred to as DME, is a mandatory service within the broader category of home health services and is a required benefit of each state Medicaid plan. 42 U.S.C. § 1396a(a)(10)(D); 42 C.F.R. § 440.70(b)(3).

19. While federal regulations do not currently define the term DME, Texas Medicaid has adopted two definitions of this service. By state regulation, DME is defined as: "[m]achinery or equipment which meets one or both of the following criteria: (A) the projected term of use is more than one year; or (B) reimbursement is made at a cost more than $1,000." 1 Tex. Admin. Code § 354.1031(b)(12). By state policy, DME is: medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness. 2010 TMPPM DME Handbook, 1.2.2. These definitions apply to all Medicaid beneficiaries, regardless of age.

20. As required by the Medicaid Act, states must establish reasonable standards for determining the extent of medical assistance under the plan and must ensure that each service,

including DME, is "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 U.S.C § 1396a(a)(17); 42 C.F.R. § 440.230(b).

21. The "reasonable standards" statutory provision and its implementing "amount, duration, and scope" regulation have been interpreted by the Fifth Circuit to prohibit Texas Medicaid from imposing age-based coverage limitations on an item of DME absent justification based on medical evidence.

22. The application of these legal requirements to a state's coverage of DME has also been addressed by the U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS") (formerly, Health Care Financing Administration or HCFA). In 1998, HCFA issued a policy statement to all State Medicaid Directors following the Second Circuit's decision in *DeSario v. Thomas,* (2nd Cir. 1998), *vacated and remanded sub nom. Slekis v. Thomas*, 525 U.S. 1098 (1999), to clarify certain legal requirements governing the provision of DME to eligible Medicaid beneficiaries. In this official guidance, commonly referred to as the *DeSario Letter*, HCFA advised state Medicaid programs that:

> [A] state will be in compliance with federal Medicaid requirements, only if, with respect to an individual applicant's request for an item of ME [medical equipment] the following conditions are met:
>
> - The process is timely and employs reasonable and specific criteria by which an individual item of ME will be judged for coverage under the State's home health services benefit. These criteria must be sufficiently specific to permit a determination of whether an item of ME that does not appear on a State's pre-approved list has been arbitrarily excluded from coverage based solely on a diagnosis, type of illness, or condition.
>
> - The State's process and criteria, as well as the State's list of pre-approved items, are made available to beneficiaries and the public.

23. Additionally, HCFA stated that a DME policy that "provide[s] no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list, is inconsistent with the federal law discussed above."

24. Pursuant to this official guidance, state Medicaid programs cannot establish irrebuttable presumptions against coverage of medically necessary DME. To do so conflicts with Medicaid's reasonable standards requirement and its implementing regulation - the amount, duration, and scope rule. 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 440.230.

25. To ensure access to medically necessary DME, CMS also reminded states that Medicaid beneficiaries who are seeking DME must be afforded a fair hearing to challenge any adverse action by the state. 42 C.F.R § 431.220(a)(1)-(2). State Medicaid hearing systems "must meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 254 (1970), and any additional standards specified in this subpart." 42 C.F.R. § 431.205(d).

26. Defendant contracts with the Texas Medicaid Healthcare Partnership ("TMHP") to administer its prior authorization process for several health care services, including DME. TMHP reviews Medicaid prior authorization requests for DME and approves or denies requested equipment based upon policies established in conjunction with HHSC.

27. If a request for an item of DME is denied, a Medicaid beneficiary may ask for a fair hearing. Defendant's regulations governing Medicaid fair hearings, however, require hearing officers to uphold the agency's denial of DME or other Medicaid services when such denials are in accordance with the agency's policies and procedures.  1 Tex. Admin. Code § 357.23(c). Hearing officers have no authority to determine whether the agency's policies and procedures unlawfully deprive beneficiaries of medically necessary DME.

28. Defendant covers overhead lifts for Medicaid beneficiaries younger than age 21.

29. In late 2010, TMHP issued a policy stating that "patient lifts that require attachment to walls, ceilings, or floors" are not a benefit of Home Health Services. Texas Medicaid Bulletin, November/December 2010. Defendant applies this policy exclusion only to Medicaid beneficiaries 21 years of age and older.

30. Due to Defendant's coverage of overhead lifts for beneficiaries younger than age 21, a request for an overhead lift by an adult Medicaid recipient results in a denial of the initial request as well as at the fair hearing. Contrary to the requirements of *Fred C.* and the *DeSario Letter,* Medicaid beneficiaries such as Scott and Juanita are denied a meaningful opportunity to challenge the denial of their requests for overhead lifts, and in particular, to a substantive review of the medical evidence required to justify an age-based coverage limitation for this item of DME.

## V. LEGAL FRAMEWORK OF THE AMERICANS WITH DISABILITIES ACT

31. In enacting the ADA, Congress found that discrimination against persons with disabilities, in essential aspects of public and private life, was current, serious, and pervasive.

32. The ADA lists among its stated purposes, a clear and comprehensive national goal to eliminate discrimination against individuals with disabilities. To achieve this goal, the Act establishes strong, consistent and enforceable standards designed to redress discrimination against individuals with disabilities.

33. Title II of the ADA prohibits discrimination by public entities against qualified individuals with disabilities. Public entities include state governments and their departments and agencies. 42 U.S.C. § 12131(A) & (B). Title II prohibits discrimination in all programs and activities of public entities. 28 C.F.R. pt. 35, app. A at 456.

34. To be a qualified individual with a disability under Title II of the ADA, an individual must have a disability, which is defined as a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2)(A). The ability to care for one's self, performing manual tasks and walking are all major life activities. The ADA defines a "qualified individual with a disability" as: "An individual . . . who, with or without reasonable modification to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

35. Title II of the ADA prohibits "discrimination" by public entities against "qualified individuals with disabilities." Public entities are prohibited from denying qualified individuals with disabilities, by reason of their disabilities, the benefits of their services, programs or activities. More specifically:

(a) A public entity, in providing any aid, benefit, or service, may not, directly or indirectly or through contractual, licensing or other arrangements, on the basis of disability . . . Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service.    § 35.130(b)(1)(i);

(b) A public entity, in providing any aid, benefit, or service may not, directly or indirectly or through contractual, licensing, or other arrangements, on the basis of disability . . . Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others. § 35.130 (b)(1)(ii);

(c) A public entity, in providing any aid, benefit or service, may not, directly or indirectly, or through contractual, licensing, or other arrangements, on the basis of disability . . . Provide a qualified individual with a disability with any aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that is provided to others. § 35.130 (b)(1)(iii);

(d) A public entity, in providing any aid, benefit or service, may not, directly or indirectly, or through contractual, licensing, or other arrangements, on the basis of disability . . . Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others

    receiving the aid, benefit or service.  § 35.130 (b)(1)(vii);

(e) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration . . . That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. § 35.130(b)(3)(i).

(f) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration . . . That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. § 35.130(b)(3)(ii).

(g) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity unless such criteria can be shown to be necessary for the provision of such service, program, or activity being offered. § 35.130(b)(8).

(h) A public entity shall not discriminate against individuals with a disability by making benefits or services available based on the severity of their disability.

36. To avoid discrimination, public entities must make reasonable modifications to their policies, practices and procedures.  Modifications are reasonable when they do not (a) fundamentally alter the nature of the activity or service being offered or (b) impose an undue financial burden to provide the requested service or activity.  28 C.F.R. § § 35.130(b)(7) & 35.135.

## VI.  STATEMENT OF FACTS

37. Scott Detgen is a 26 year old individual with a disability and an eligible Medicaid beneficiary in the state of Texas.

38. Shortly following his birth, Scott was diagnosed with cerebral palsy, and as a result, has numerous medical conditions including quadriparesis, legal blindness, and a seizure disorder. In addition, Scott has severe contractures and a history of hip dislocation, medical conditions that exacerbate the difficulty of moving him and increase his risk of injury during the

Case 3:11-cv-02974-G-BD   Document 1   Filed 10/31/11   Page 11 of 20   PageID 11

transfer process. Scott is incontinent of bowel and bladder and is dependent upon his caregivers to meet all of his personal care needs.

39. Scott is 5'2" tall and weighs approximately 95 pounds. Unable to walk, bear weight, sit independently, or assist with repositioning or transferring, Scott must be manually transferred by one or both of his parents from his bed to the floor, to and from the bathtub, and to a stair lift that is used to move him from the second to first floor of his home. These numerous daily transfers are necessary to maintain hygiene, avoid skin breakdown, and enable Scott to participate in community life and avoid becoming bed-bound.

40. In an effort to address the inherently unsafe process of manual transfers for her son, Cory Detgen contacted a lifting specialist with a Medicaid-enrolled rehabilitation equipment provider to determine which patient lift would best address Scott's total dependence on caregivers for transfers, including those from bed to bath, to the floor, and to the stairway chair lift. An overhead lift system was identified as the appropriate DME for transferring Scott in all three locations as a floor lift is ineffective and unsafe in the bedroom and the hallway due to limited space and close proximity to the stairway and is completely unusable in the bathroom.

41. Unlike a standard floor lift, the recommended overhead lift system (known as the Human Care Roomer 5200) moves along a track attached to the ceiling and allows the user to move from bedroom to bathroom or other designated locations in the home without additional transfers.

42. Installation of the recommended overhead lift system does not require any structural change to the wall or door headers or any modification to the home. The installation process for this lift is akin to that of shelves or pictures on a wall as the entire lift system can be removed and reinstalled should the user relocate to a new home.

-11-                                              *Plaintiffs' Original Complaint*

43. On or about October 26, 2010, a request for prior authorization of the recommended overhead lift system was submitted to TMHP. The benefits of the recommended overhead lift system were described in the prior authorization request and established that this type of patient lift will provide the safest means of transfer for Scott. Accompanying documentation explained why a standard floor lift or other type of DME will not meet Scott's medical needs.

44. As additional support for this request, Scott's treating physician provided a letter of medical necessity, which described, among other things, his disability and functional limitations, the ongoing risk of injury he faces during transfers without an appropriate patient lift, and the fact that this equipment will be needed throughout his lifetime.

45. In reviewing Scott's request for prior authorization of an overhead lift, TMHP did not consider whether the recommended overhead lift meets Defendant's definitions of DME to determine whether it is covered through the home health benefit. Instead, TMHP relied upon a policy that states that "patient lifts that requiring attachment to walls, ceilings, or floors" are not a benefit of Home Health Services. Texas Medicaid Bulletin, November/December 2010.

46. On October 29, 2010, TMHP issued a denial of Scott's request for an overhead lift system stating that:

> You have asked for an overhead lift system for your home. An overhead lift must be attached to the ceilings in your home. Attaching the lift to a ceiling is a structural change to your home. Equipment that requires a structural change to the home is a home modification. Texas Medicaid does not receive federal financial participation for home modifications because home modifications are not listed as Medicaid benefits under Section 1905a of the Social Security Act. Because Texas Medicaid does not get federal financial participation for home modifications your request cannot be approved.

47. In support of this denial, TMHP cited multiple federal and state regulations, none of which require or authorize the exclusion of overhead lift systems from Medicaid coverage for

adult beneficaries. A Medicaid fair hearing was requested on Scott's behalf on November 15, 2010, to challenge TMHP's unlawful denial of medically necessary DME.

48. An administrative hearing was held on April 13, 2011, before an HHSC hearing officer. Extensive legal arguments were made on Plaintiff's behalf concerning the illegality of Defendant's denial of this overhead lift. Nonetheless, a decision was issued by HHSC on August 25, 2011, concluding that "TMHP correctly denied Appellant's request for an overhead lift system" in accordance with agency policy. Once again, Texas Medicaid, through its hearing officer failed to make any determination as to whether the requested overhead lift met Defendant's definition of DME, why such lifts are only characterized as home modifications when the beneficiary is over 20 years of age, or to consider Scott's individualized need for this item of DME. Like TMHP, the hearing officer simply applied Defendant's policy that categorically excludes overhead lifts from coverage for beneficiaries 21 years of age or older.

49. By establishing policies that categorically exclude specific items of DME from coverage, Defendant deprives Medicaid beneficiaries like Scott of a fair and impartial review of his right to medically necessary DME. With such policies in place, the hearing officer is limited in his or her consideration of the case and must simply determine whether the unlawful policy was correctly applied to the beneficiary.

50. Juanita Barraza is a Texas Medicaid beneficiary who is eligible for home health services, including DME. She is 44 years old and has a history of long-standing medical conditions and disabilities. For example, Ms. Barraza contracted measles at two years of age and suffered brain damage. As a result, she lost the ability to walk and talk and was later diagnosed with a significant intellectual disability.

51. By age six, Juanita regained the ability to walk and continued to be ambulatory, albeit with a somewhat impaired gait. In 2010, however, Ms. Barraza experienced a number of ischemic strokes that left her completely nonambulatory. Since then, Ms. Barraza has been diagnosed with paralysis secondary to cerebral atrophy.

52. In December 2010, a lifting specialist with a Medicaid-enrolled rehabilitation equipment provider met with Juanita and her mother to determine which patient lift would best address her transfer needs, given her complete dependency on her caregiver during transfers to and from her bed and bath and the limitation of her living space. Because her floor lift is ineffective and unsafe for bed and bath transfers, an overhead lift system was identified as the appropriate DME for transferring Juanita.

53. On or about February 9, 2011, a request for prior authorization of an overhead lift was submitted to TMHP on Juanita's behalf. The benefits of the recommended overhead lift system were described in the prior authorization request and established that this type of patient lift will provide the safest, most effective means of transfer for Juanita.

54. In further support of this request for an overhead lift system, Juanita's treating physician provided a letter of medical necessity, which described, among other things, her disability and functional limitations, her bed-bound status without an appropriate patient lift, the ongoing risk of injury she faces if transferred with an inappropriate patient lift, and why a floor lift will not work for Juanita.

55. On February 11, 2011, TMHP denied Juanita's request for an overhead lift system stating that:

> You have asked for an overhead lift system for your home. An overhead lift must be attached to the ceilings in your home. Attaching the lift to a ceiling is a structural change to your home. Equipment that requires a structural change to your home is a home modification. Texas Medicaid does not receive federal

financial participation for home modifications because home modifications are not listed as Medicaid benefits under Section 1905a of the Social Security Act. Because Texas Medicaid does not get federal financial participation for home modifications your request cannot be approved.

56. In support of this denial, TMHP cited multiple federal and state regulations, none of which require or authorize the absolute exclusion of overhead lift systems for adult Medicaid beneficiaries.

57. A Medicaid fair hearing was requested on Juanita's behalf on March 30, 2011, to challenge TMHP's denial of this medically necessary DME and this hearing was held on July 11, 2011.

58. A fair hearing decision was issued on August 31, 2011. Once again, the hearing officer failed to consider whether the requested lift meets Texas Medicaid's definitions of DME or make an individualized determination as to Juanita's needs. Instead, the hearing officer issued a single conclusion of law, stating that:

> The Texas Medicaid Provider Procedure Manual instructs home health providers to obtain prior authorization for all durable medical equipment; moreover, as a state-contracted provider of home health services United Rehab Services must follow the most current instructions issued by the TMHP regarding requests for durable medical equipment. In this instance, United Rehab Services failed to follow the most current instructions issued in *Texas Medicaid Bulletin 232* which specifically stated that "patient lifts requiring attachment to walls, ceilings, and floors were not a covered item of Texas Medicaid benefits; therefore, the TMHP denial was correct.

59. Like TMHP, HHSC's hearing officer failed to make any determination as to whether the requested overhead lift met Defendant's definition of DME, why such lifts are only characterized as home modifications when the beneficiary is 21 years of age or older, or to consider Juanita's individualized need for this item of DME. Instead, the hearing officer simply applied Defendant's policy that categorically excludes overhead lifts from coverage for beneficiaries 21 years of age or older. In this case, however, the hearing officer went one step

further, suggesting that Medicaid beneficiaries cannot even request DME that is categorically excluded by policy.

60. Defendant's categorical exclusion of overhead lifts for adult beneficiaries discriminates against Medicaid beneficiaries with the most severe disabilities. While Texas Medicaid covers transfer devices and floor lifts for individuals who have the requisite physical ability to benefit from this DME, the program excludes overhead lifts that may be required by individuals with severe physical disabilities.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

61. Plaintiff restates and incorporates by reference each of the allegations in Paragraphs 1 through 60, above.

62. Defendant's rules, policies, and practices, which unreasonably exclude medically necessary overhead lifts from coverage for beneficiaries 21 years of age and older, conflict with the reasonable standards requirement of the Medicaid Act, 42 U.S.C. § 1396a(a)(17), and are preempted by the Supremacy Clause of the United States Constitution, art. VI, cl 2.

63. Defendant's rules, policies, and practices, which unreasonably exclude medically necessary overhead lifts from coverage for beneficiaries 21 years of age and older, conflict with Medicaid's amount, duration, and scope rule, 42 C.F.R. § 440.230(b-c), and are preempted by the Supremacy Clause of the United States Constitution, art. VI, cl 2.

### SECOND CAUSE OF ACTION

64. Plaintiff restates and incorporates by reference each of the allegations in Paragraphs 1 through 60, above.

65. Defendant's rules, policies, and practices, which unreasonably exclude medically necessary overhead lifts from coverage for beneficiaries 21 years of age and older, and which require hearing officers to uphold these unlawful policies, deprive Medicaid beneficiaries like Scott and Juanita of their due process right to a fair hearing as guaranteed by the Fourteenth Amendment to the United States Constitution. U.S. CONST. amend. XIV.

66. These violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION

67. Plaintiff restates and incorporates by reference each of the allegations in Paragraphs 1 through 60, above.

68. Defendant's rules, policies, and practices, which unreasonably exclude medically necessary overhead lift from coverage for beneficiaries 21 years of age and older, and which require hearing officers to uphold these unlawful policies, deprive Medicaid beneficiaries like Scott and Juanita of their due process right to a fair hearing, in violation of relevant provisions of the Medicaid Act, including 42 U.S.C. § 1396a(a)(3)

69. These violations, which have been repeated and knowing, entitle Plaintiffs to relief under 42 U.S.C. § 1983 and the Medicaid Act.

### FOURTH CAUSE OF ACTION

70. Plaintiff restates and incorporates by reference each of the allegations in Paragraphs 1 through 60, above.

71. Defendant's rules, policies, and practices, which unreasonably exclude medically necessary overhead lift from coverage for beneficiaries 21 years of age and older, discriminate

against Scott and Juanita due to the severity of their disabilities in violation of relevant provisions of the Americans with Disabilities Act, 42 U.S.C. §12132 and the Act's implementing regulations. 28 C.F.R.§35.130

## VIII.  REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

1. Assume jurisdiction over the case;

2. Issue a declaratory judgment declaring that Defendant's rules, policies, and practices that categorically exclude medically necessary overhead lifts from coverage conflicts with the reasonable standards requirement of the Medicaid Act, 42 U.S.C. § 1396a(a)(17) and the amount, duration, and scope rule, 42 C.F.R. § 430.230 and are preempted by the Supremacy Clause of the United States Constitution;

3. Grant preliminary and permanent injunctions against Defendant enjoining him from categorically excluding medically necessary overhead lifts from coverage in conflict with the reasonable standards requirement of the Medicaid Act and the amount, duration, and scope rule;

4. Issue a declaratory judgment declaring that Defendant's rules, policies, and practices violate the due process protections afforded by the Fourteenth Amendment to the United States Constitution and relevant provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.200 *et seq.*;

5. Grant preliminary and permanent injunctions against Defendant enjoining him from violating the due process rights of Medicaid beneficiaries afforded by the

      Fourteenth Amendment to the U.S. Constitution and the Medicaid Act, 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.200 *et seq.*;

6. Issue a declaratory judgment declaring that Defendant's rules, policies, and practices, which discriminate against beneficiaries with severe physical disabilities, violate relevevant provisions of the ADA. 42 U.S.C. §12132; 28 C.F.R. § 35.130;

7. Grant preliminary and permanent injunctions against Defendant enjoining him from violating Scott and Juanita's right to be free from discrimination based upon disability as guaranteed by the ADA. 42 U.S.C, § 12132; 28 C.F.R. § 35.130;

8. Order Defendant to prior authorize the medically necessary DME to which Plaintiffs are entitled;

9. Award Plaintiffs their costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

10. Grant such other prospective relief that is just, necessary, and appropriate to protect the rights of Plaintiffs.

Respectfully submitted,


/s/ Maureen O'Connell
MAUREEN O'CONNELL
Texas Bar No. 00795949
Attorney-In-Charge
SOUTHERN DISABILITY LAW CENTER
1307 Payne Avenue
Austin, Texas 78757
(512) 458-5800 Phone
(512) 458-5850 Fax
Email: moconnell@sdlcenter.org



  /s/ Lewis Golinker
LEWIS GOLINKER
New York Bar No.101819
401 East State Street, Suite 300
Ithaca, NY 14850
607-277-7286 Phone
607-277-5239 Fax
Email: LGolinker@aol.com

ATTORNEYS FOR PLAINTIFFS