UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SCOTT DETGEN by his next friend L.C. )
DETGEN, ET AL., )
 )
   Plaintiffs, )    CIVIL ACTION NO.
 )
VS. )    3:11-CV-2974-G
 )
DR. KYLE JANEK, in his official capacity )
as Executive Commissioner, Texas Health )
and Human Services Commission, )
 )
   Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the court are the cross-motions for summary judgment of the plaintiffs

and the defendant (docket entries 37 and 39).  For the reasons stated below, the

plaintiffs' motion is denied and the defendant's motion is granted.

### I. BACKGROUND

#### A. Factual Background

Scott Detgen ("Detgen"), Juanita Barazza ("Barazza"), Brandon Doyel

("Doyel"), and Joshua Vargas ("Vargas") (collectively, the "plaintiffs") bring this suit

because the defendant, Dr. Kyle Janek ("Janek"), acting in his official capacity as the Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"), and his agents, the Texas Medicaid and Healthcare Partnership ("TMHP") and Superior Health Plan, denied the plaintiffs' claims for Medicaid benefits for a particular type of ceiling lift, an item of medical equipment used to transfer a patient to and from bed, bath, wheelchair, and other surfaces.

1. *Scott Detgen*

Detgen is a 28 year old resident of Rockwall County, Texas. *See* Second Amended Complaint ("Complaint") ¶ 11 (docket entry 25); Plaintiffs' Sealed Appendix in Support of Motion for Summary Judgment ("Plaintiffs' Sealed Appendix 1"), Ex. 27 Detgen Affidavit ("Aff.") ¶ 5 at 83 (docket entry 42). He receives Supplemental Security Income ("SSI") due to his disability and is categorically-eligible for the Texas Medicaid program. *See* Complaint ¶ 11. Detgen was diagnosed with cerebral palsy at birth and has numerous medical conditions including quadriplegia, legal blindness, seizure disorder, severe contractures, and a history of hip dislocation. Plaintiffs' Sealed Appendix 1, Ex. 27 Detgen Aff. ¶ 2 at 83. He is incontinent of bowel and bladder and is dependent upon his caregivers to meet his personal care needs. *Id.* ¶¶ 3-4 at 83. He is 5 feet 2 inches tall and weighs approximately 95 pounds. *Id.* ¶ 5 at 83. Detgen is unable to walk, bear weight, sit independently, or assist with repositioning or transferring, and he must be manually

transferred by one or both of his parents from his bed to the floor, to and from the bathtub, and to a stair lift that is used to move him between the first and second floors of his house.  *Id.* ¶¶ 4, 6 at 83.  These transfers are necessary for Detgen to maintain his hygiene and to prevent skin breakdown.  *Id.* ¶ 3 at 83.

To assist with the process of transfers, Detgen's mother contacted a lifting specialist with a Medicaid-enrolled equipment provider to find a patient lift that would best alleviate Detgen's total dependence on caregivers for transfers.  *Id.* ¶ 9 at 84.  A ceiling lift was identified as the type of lift that could meet Scott's transfer needs in the three locations of his home for which transfers were required (bedroom, bathroom, and stairway).  *Id.*  The provider specifically identified a ceiling lift known as the "Roomer 5200," which moves along a track that runs across the ceiling and allows the user to move from bedroom to bathroom or other designated locations in the home without additional transfers.  *Id.* ¶ 10 at 84.

On October 26, 2010, United Rehab Specialists, Inc., the provider of the Roomer 5200, submitted a request for prior authorization of the recommended ceiling lift to TMHP.  *Id.* Exhibit 28 at 86-92.  On October 29, 2010, TMHP issued a denial notice that stated, in relevant part:

> You have asked for an overhead lift system for your home. An overhead lift must be attached to the ceilings in your home.  Attaching the lift to a ceiling is a structural change to your home.  Equipment that requires a structural change to the home is a home modification.  Texas Medicaid does not receive federal financial participation for home

> modifications because home modifications are not listed as
> Medicaid benefits under Section 1905a of the Social
> Security Act.  Because Texas Medicaid does not get federal
> financial participation for home modifications your request
> cannot be approved.

*Id.*  Exhibit 29 at 93-94.

A Medicaid fair hearing was requested on Detgen's behalf on November 15, 2010, to challenge TMHP's application of this policy exclusion to Detgen's request. *Id.* Ex. 27, Detgen Aff. ¶ 15 at 84.  The hearing was held on April 13, 2011, before an HHSC hearing officer.  The hearing decision was issued by HHSC on August 25, 2011, and concluded that "TMHP correctly denied Appellant's request for an overhead lift system" in accordance with agency policy.  *Id.* Ex. 30 at 95-111.

### 2.  *Juanita Barraza*

Barraza is a 45 year old Medicaid recipient in the state of Texas.  *Id.* Ex. 31, Villareal Aff. ¶ 3 at 112.  She has a history of long-standing medical conditions and disabilities, beginning at age 2 when she contracted measles and sustained brain damage.  *Id.*  As a result of this, Barraza lost the ability to walk and talk and was later diagnosed with a significant intellectual disability.  *Id.*  Several years later, she regained the ability to walk and continued to be ambulatory, albeit with a somewhat impaired gait.  *Id.*  In 2010,[1] Barraza experienced a number of ischemic strokes that

---

[1]     The affidavit appears to contain a typographical error that states Barraza's strokes occurred in 2012.  However, given the timeline implied by the rest of the affidavit, the court will assume that the plaintiffs' summary judgment motion

(continued...)

- 4 -

left her completely non-ambulatory; she was subsequently diagnosed with paralysis due to cerebral atrophy.  *Id.* ¶ 4 at 112.

Barraza lives at home with her mother who is her primary caregiver.  *Id.* ¶ 2 at 112.  Following Barraza's return home from hospitalization in late 2010, and after Villareal's assessment that the floor lift the hospital had ordered could not be used safely, a lifting specialist with a Medicaid-enrolled provider met with Barraza and her mother.  *Id.* ¶¶ 7-8 at 112.  The purpose of the meeting was to determine a lifting solution that would best address Barraza's transfer needs, given her complete dependence on her caregiver during transfers to and from her bed and bath and the physical limitations of her living space.  *Id.* ¶ 8 at 112.  A ceiling lift was identified as an appropriate solution for safely transferring Barraza both in and out of bed and bath.  *Id.*

In February 2011, a request for prior authorization of a ceiling lift was submitted to TMHP on Barraza's behalf.  *Id.* Ex. 32 at 114-123.  On February 11, 2011, TMHP denied Barraza's request for a ceiling lift, using precisely the same language quoted above from its letter to Detgen.  *Id.* Ex. 33 at 127.  A Medicaid fair hearing was requested on Barraza's behalf in March 2011 to challenge the application of HHSC's policy to Barraza's prior authorization request for a ceiling lift.  *Id.* Ex. 31

---

[1](...continued)
identifies the correct year of the strokes as 2010.  *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgment ("Plaintiffs' Motion") at 7 (docket entry 40).

Villareal Aff. ¶ 11.  The hearing was held on July 11, 2011, and a decision was issued

on August 31, 2011.  *Id*. ¶¶ 11-12.  The hearing officer issued a single conclusion of

law, stating that:

> The Texas Medicaid Provider Procedure Manual instructs
> home health providers to obtain prior authorization for all
> durable medical equipment; moreover, as a state-contracted
> provider of home health services United Rehab Services
> must follow the most current instructions issued by the
> TMHP regarding requests for durable medical equipment.
> In this instance, United Rehab Services failed to follow the
> most current instructions issued in *Texas Medicaid Bulletin
> 232* which specifically stated that "patient lifts requiring
> attachment to walls, ceilings, and floors" were <u>not</u> a
> covered item of Texas Medicaid benefits; therefore, the
> TMHP denial was correct.

*Id.* Ex. 34 at 143 (emphasis in original).

### 3.  *Brandon Doyel*

Doyel is a 35 year old Texas resident and Medicaid recipient, born prematurely

and, at 18 years old, diagnosed with quadriplegia, secondary to cerebral palsy.  *Id.* Ex.

35, Doyel Aff.  ¶ 2 at 145.  As a result of his medical condition, Doyel is unable to

walk and has used a power wheelchair for mobility since he was 4 years old.  *Id.*

Doyel is 5 feet 10 inches tall and weighs approximately 170 pounds.  *Id.* ¶ 3.

Doyel lives alone and requires assistance with activities of daily living from

personal care providers, including physical assistance with all transfers throughout the

day.  *Id.* ¶ 4.  Doyel's daily transfer needs include transfers from bed to wheelchair,

wheelchair to toilet, wheelchair to bathtub, and wheelchair to standing frame.  *Id.*

These numerous transfers are performed manually by Doyel's personal care providers.
*Id.*  Doyel has taken steps to reduce his daily number of transfers, including the use of
a catheter to avoid transfers to the toilet.  *Id.* ¶ 7.  He also has foregone the use of a
"stander" on a daily basis, because his care providers cannot safely transfer him into
the device.  *Id.*

In December 2010, a lifting specialist with a Medicaid-enrolled provider met
with Doyel to determine a lifting solution that would best address his transfer needs.
*Id.* ¶ 8.  A ceiling lift was identified as an appropriate solution for transferring Doyel
throughout the day.  *Id.*  In early February 2011, a request for prior authorization of
a ceiling lift was submitted to TMHP on Doyel's behalf.  *Id.* ¶ 10 at 146.  On
February 9, 2011, TMHP denied Doyel's request, using precisely the same language
as in its denial of Detgen's request, quoted above.  *Id.* Ex. 37 at 160.  On April 11,
2011, a Medicaid fair hearing was requested on Doyel's behalf, to challenge TMHP's
denial of the request for a ceiling lift.  *Id.* Ex. 35 ¶ 11 at 146.  The hearing was held
on July 20, 2011.  *Id.*  On March 7, 2012, the hearing officer issued a decision
upholding TMHP's denial, finding the ceiling lift was an "expense that is not a
benefit of Home Health services."  *Id.* Ex. 38 at 164-65.  The hearing officer relied on
TMHP's policy exclusion of lifts requiring attachment to walls, ceilings, or floors.  *Id.*

4.  *Joshua Vargas*

Vargas is a 21 year old Texas resident and Medicaid recipient diagnosed with Duschenne Muscular Dystrophy at age 6.  *Id.* Ex. 39 at 168-170, 176-78; *see also* Plaintiffs' Motion at 11.  Due to the progressive nature of this condition, Vargas uses a custom power wheelchair for mobility and relies on a ventilator to assist with breathing.  Plaintiffs' Appendix 1 Ex. 39 at 168-170, 176-78.  In addition, Vargas has severe scoliosis and contractures in his upper and lower extremities.  *Id.*  This complicates the process of manual transfers in and out of his bed and wheelchair and into the bathtub.  *Id.*  Vargas has a history of decubiti, which puts him at high risk for ongoing skin breakdown.  *Id.*  Vargas is 5 feet 6 inches tall and weighs approximately 140 pounds.  *Id.*  His mother or father manually transfer him when necessary, because space limitations in his bedroom and bathroom prevent use of a floor lift.  *Id.* He has apparently previously been injured during transfers.  *Id.*  After an extended hospitalization in the summer of 2011, a home health agency met with Vargas and his mother to discuss his daily nursing and personal care needs.  *Id.*; *see also* Plaintiffs' Motion at 12.  The agency referred the Vargases to a Medicaid-enrolled provider to assist with determining an appropriate lifting solution for Vargas.  *Id.*  A ceiling lift was identified as the only patient lift that would effectively meet Vargas's transfer needs.  *Id.*

In October 2011, a request for prior authorization for a ceiling lift was submitted on Vargas's behalf. Plaintiffs' Appendix 1 Ex. 39 at 167. On October 21, 2011, the request was denied on the basis of the same policy under which Detgen's, Barraza's, and Doyel's requests had been denied. *Id.* Ex. 40 at 179-81. On November 30, 2011, Vargas was added as a plaintiff in this suit. *See* First Amended Complaint ¶ 1 (docket entry 15). His request for a ceiling lift was subsequently granted, not under Medicaid's home health benefit provisions but under the home and community-based waiver services provisions discussed below. *See* Plaintiffs' Motion at 13. These waiver services are subject to annual and lifetime cost caps; thus, the inclusion of the ceiling lift in Vargas's budget for these services may in the future prevent him from receiving other benefits under the waiver provisions. *Id.*

## B. Procedural Background

The plaintiffs Detgen and Barraza filed a complaint against Thomas Suehs (at that time the Executive Commissioner of HHSC) on October 31, 2011, alleging that Texas Medicaid's policies are in violation of the Medicaid Act and the Americans with Disabilities Act ("ADA") and that they (Detgen and Barraza) were denied due process in violation of the Fourteenth Amendment and the fair hearing provisions of the Medicaid Act. *See* Complaint ¶¶ 61-71 (docket entry 1). On November 30, 2011, the plaintiff Vargas was added to the litigation in the plaintiffs' amended complaint. *See* First Amended Complaint. On April 13, 2012, the plaintiff Doyel was added to

- 9 -

the litigation in a second amended complaint.  *See* Second Amended Complaint.  In

all other relevant respects, particularly with regard to the claims alleged against Texas

Medicaid's executive commissioner, this second amended complaint mirrors the

initial complaint.  The defendant filed an answer to the second amended complaint

on April 26, 2012.  *See* Defendant's Answer to Second Amended Complaint (docket

entry 28).  On October 1, 2012, the parties filed the instant motions for summary

judgment.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions,

disclosure materials on file, and affidavits, if any, "show[] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive

law identifies it as having the potential to affect the outcome of the suit.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id*.; see also *Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481,

---

[2]        Disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id*. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara*, 353 F.3d at 405.

## B.  Evidentiary Objections

HHSC[3] raises several objections to the evidence on which the plaintiffs rely to support their motion for summary judgment.  It objects to some of the testimony offered through the affidavit of Curtis Merring, on the grounds that such testimony is either unreliable opinion testimony or hearsay.  *See* Defendant's Brief in Support of Response in Opposition to Plaintiffs' Motion for Summary Judgment at 1-4 (docket entry 47).  The defendant also objects on hearsay grounds to statements in the affidavits of L.C. Detgen, Yolanda Villareal, and Brandon Doyel.  *Id.* at 4.  Because the court did not find it necessary to rely on this evidence in support of its decision, these objections are overruled as moot.  See *Continental Casualty Company v. St. Paul Fire & Marine Insurance Company*, 2006 WL 984690 at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence not relied on by the court in its summary judgment decision).

## C.  Section 1983

42 U.S.C. § 1983 states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

---

[3]        Though Dr. Kyle Janek is the named defendant, because the suit is against him in his official capacity as the executive commissioner of HHSC, the court will refer to the defendant throughout as "HHSC."  See, *e.g.*, *Koenning v. Suehs*, 2012 WL 4127956, at *1 n. 1 (S.D. Tex. Sept. 18, 2012).

> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.

The statute by its terms authorizes private suits against government officials for the "deprivation of any rights, privileges, or immunities." *Id.* HHSC makes the creative suggestion that "a section 1983 lawsuit cannot get off the ground unless a litigant first shows that a state officer has violated a federal legal obligation." *See* Defendant's Brief in Support of Motion for Summary Judgment ("Defendant's Motion") at 13 (docket entry 37-1). It cites *Wright v. City of Roanoke* for this suggestion, which states that "*Maine v. Thiboutot*, 448 U.S. 1 (1980), held that § 1983 was available to enforce violations of federal statutes by agents of the State." See *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423 (1987).

First, the court notes that there is no mention in the statute of a potential defendant's "violation" of his or her legal obligations. Rather, the statute on its face sets up a liability scheme for the "deprivation of any rights . . ." of a potential plaintiff, whether such a deprivation constitutes a "violation" of the defendant's legal obligations or not. 42 U.S.C. § 1983. Second, the *Wright* case does not address the novel argument HHSC advances in this litigation. Despite the language quoted by HHSC, it is not at all clear that the Court intended to fashion an initial threshold

- 13 -

requirement that the plaintiff in a § 1983 suit show that the defendant "violated" one (or more) of the defendant's legal obligations.  It is true that in many cases it will be natural to speak of a defendant's deprivation of the plaintiff's rights as such a "violation."  But HHSC cites no authority that would support this court imposing a threshold requirement in § 1983 suits of showing that a defendant's actions can be characterized as the "violation of a [defendant's] legal obligation."  Rather, the inquiry courts generally pursue is whether the defendant's actions have deprived the plaintiff of a right conferred on the plaintiff by law.  See, *e.g.*, *Wright*, 479 U.S. at 423-32 (examining whether the Housing Act and the Brooke Amendment evince congressional intent to foreclose a § 1983 remedy and create individual rights enforceable in a § 1983 action).

HHSC also relies on the Supreme Court's *Gonzaga* decision for its argument, *see* Defendant's Motion at 15-16, but all that *Gonzaga* held was that where a federal statute does not unambiguously create an individual "right" in a plaintiff, no Section 1983 suit can be maintained.  See *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002).  The Court in *Gonzaga* focused on whether certain provisions of the Family Educational Rights and Privacy Act of 1974 ("FERPA") contain "rights-creating language" and whether those provisions have an "aggregate" or an "individual" focus. *Id.* at 287-90.

Here, the only claims the plaintiffs bring that are rooted in § 1983 are claims of violations of due process under the Fourteenth Amendment and the Medicaid Act. *See* Complaint ¶¶ 91, 94.  Clearly, the Fourteenth Amendment confers an individual right enforceable in a § 1983 suit.  See, *e.g.*, *Arnaud v. Odom*, 870 F.2d 304, 307 (5th Cir.), *cert. denied*, 493 U.S. 855 (1989).  The language of the fair hearing provision of the Medicaid Act also unambiguously confers individual rights.  42 U.S.C. § 1396a(a)(3) states that

> [a] State plan for medical assistance *must* . . . provide for granting an opportunity for a fair hearing before the State agency to *any individual* whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness . . . .

(emphasis added).  The language is mandatory, the provision contains rights-creating language, and there is an individual focus.  This is enough to show that, in conformity with *Gonzaga*, the statute unambiguously confers a private individual right that may be enforced under § 1983.

The court also notes that the fair-hearing provision easily satisfies the three-factor *Blessing* test, namely, (1) whether Congress intended that the provision in question benefit the plaintiff; (2) whether the right protected by the statute is so "vague and amorphous" that its enforcement would strain judicial competence; and (3) whether the statute unambiguously imposes a binding obligation on the States. See *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  Congress clearly intended that

- 15 -

any individual whose claim for Medicaid benefits was denied would be benefitted by the fair hearing provision.  The right to a fair hearing that is protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. This is particularly true where the Medicaid regulations clarify that the right is coextensive with the right articulated in *Goldberg v. Kelly*, 397 U.S. 254 (1970).  42 C.F.R. § 431.205(d).  Courts have vast experience in applying the *Goldberg* test of due process.  And finally, the statute imposes a mandatory obligation on the states, since they "must" provide a fair hearing.  42 U.S.C. § 1396a(a)(3).  The Medicaid fair hearing provision thus meets all three of the *Blessing* factors.

HHSC's threshold argument that all of the plaintiffs' claims can be disposed of on a finding that the defendant violated "no legal obligation" fails.

## D.  Supremacy Clause

The plaintiffs rely on the Supremacy Clause to support their claim that HHSC's rules, policies, and practices conflict with the "reasonable standards" and "amount, duration, and scope" provisions and regulations of the Medicaid Act and are thus preempted.  *See* Complaint ¶ 88.  The court notes as an initial matter that it is clear from the case law that "the federal courts have jurisdiction under 28 U.S.C. § 1331 over a preemption claim seeking injunctive and declaratory relief." *Planned Parenthood of Houston and Southeast Texas v. Sanchez*, 403 F.3d 324, 331 (5th Cir. 2005).  In addition, the Fifth Circuit has held that the Supremacy Clause provides

- 16 -

plaintiffs with a valid implied cause of action. *Id.* at 333. Thus, none of HHSC's

threshold arguments will prevent the court from considering the merits of the

plaintiffs' Supremacy Clause claim. The question the court must proceed to answer is

whether there is conflict between the Medicaid Act's provisions (and regulations

implementing those provisions) and HHSC's rules, policies, and practices with respect

to the ceiling lift at issue in this case, such that HHSC's rules and policies are

preempted.

### E. Medicaid Act and HHSC's policies

#### 1. *Legal framework*

Medicaid is a cooperative federal-state program that provides medically

necessary health care to low income families and individual with disabilities. *See* 42

U.S.C. § 1396 *et seq.* The Centers for Medicare & Medicaid Services ("CMS")

administers the federal program, and participating states are required to designate a

single state agency to administer their Medicaid program. *See* 42 U.S.C.

§ 1396a(a)(5). HHSC is the single state agency responsible for administering Texas's

Medicaid program. *See* Defendant's Appendix in Support of its Motion for Summary

Judgment ("Defendant's App. 1"), Declaration of Robert Perez ("Perez Decl.") ¶ 3 at

1-2 (docket entry 38).

Title XIX of the Social Security Act identifies a set of services that all states

that participate in Medicaid must provide to eligible persons, including but not

limited to inpatient and outpatient hospital services, Early Periodic Screening,

Diagnosis, and Treatment ("EPSDT") services for persons under age 21, physician

services, home health care, and pregnancy-related services.  *See* 42 U.S.C. § 1396a *et*

*seq.*  Title XIX also requires that services provided under a Medicaid state plan be:

(1) available statewide; (2) the same or comparable for all individuals eligible for the

program; and (3) available to individuals determined financially eligible through a

single standard for determining income and resource eligibility.  *Id.*  If a state elects to

participate in Medicaid, it creates and submits for federal approval a State Medicaid

Plan ("the State plan").  *Id.*  In order to be eligible for continuing federal financial

support for its Medicaid program, a state must comply with the State plan as

approved by CMS.  42 U.S.C. § 1396c.  A state's discretion in the administration of

its plan is further limited by the requirement, set forth in § 1396a(a)(17), that its

plan "include reasonable standards . . . for determining eligibility for and the extent of

medical assistance under the plan."  By regulation, each service "must be sufficient in

amount, duration and scope to reasonably achieve its purpose," and a state "may not

arbitrarily deny or reduce the amount, duration, or scope of a required service . . .

solely because of the diagnosis, type of illness, or condition."  42 C.F.R.

§ 440.230(b)-(c).

   The State plan must, among other things, specify the categories of services

available to eligible beneficiaries.  42 U.S.C. § 1396a(a).  One such category is home

health services, which includes items known as durable medical equipment ("DME").

42 U.S.C. § 1396a(a)(10)(D); 42 C.F.R. § 440.70.  Federal statutes do not define

DME, but individual state plans often provide specific guidelines for what constitutes

covered DME.  Some states, including Texas, identify a list of pre-approved DME

items.  See, *e.g.*, 1 Tex. Admin. Code § 354.1039(a)(4).  In response to a Second

Circuit opinion, *DeSario v. Thomas*, 139 F.3d 80 (2d Cir. 1998), *cert. granted, judgment*

*vacated* by *Slekis v. Thomas*, 525 U.S. 1098 (1999), addressing the required extent of

DME coverage, CMS's predecessor agency (the Health Care Financing

Administration) wrote a September 4, 1998 letter providing guidance clarifying its

position on DME coverage under Medicaid (the "*DeSario* letter").  *Letter from Sally K.*

*Richardson, Director of Centers for Medicaid and State Operations*, September 4, 1998,

available at

http://downloads.cms.gov/cmsgov/archived-downloads/SMDL/downloads/SMD09049

8.pdf (last visited Jan. 29, 2012).  The letter advised that states limiting DME

coverage must meet three conditions:

> (1)  The process for deciding coverage must use reasonable
> and specific criteria that do not arbitrarily exclude items
> based solely on a type of illness or condition;
>
> (2)  The State's process and criteria, as well as its list of
> pre-approved DME items, must be publicly available; and
>
> (3)  Beneficiaries must be informed of their right to a fair
> hearing to determine whether an adverse decision is
> contrary to law.  *Id.*

Texas Medicaid provides guidance as to the extent of its DME coverage.  The Texas Medicaid Provider Procedures Manual ("TMPPM") states:

> Texas Medicaid defines DME as: Medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness . . .  To be reimbursed as a home health benefit:  . . .  The requested equipment or supply must be medically necessary, and Federal Financial Participation (FFP) must be available.

*Texas Medicaid Provider Procedures Manual* § 2.2.2.

Section 2.2.24 of the TMPPM further states that Texas Medicaid cannot reimburse a beneficiary "for any service, supply or equipment for which FFP is not available."  *Id.* at § 2.2.24.  Because of this, Texas Medicaid Home Health Services coverage under the State Plan does not include, among other things, "[s]tructural changes to homes, domiciles, or other living arrangements," as those items are not eligible for FFP.  *Id*.  Furthermore, section 2.2.14.26 of the TMPPM states that "[p]atient lifts requiring attachment to walls, ceilings, or floors . . . are not a benefit of Home Health Services" under Texas Medicaid.  *Id.* at § 2.2.14.26.  The plaintiffs' requests for the particular ceiling lift at issue in this case were denied based on this policy.

Texas Medicaid requires claimants to obtain "prior authorization" for most DME items in order to be reimbursed through Medicaid.  See 1 Tex. Admin. Code §§ 354.1035(b)(1) and 354.1039(a).  The Texas Medicaid and Healthcare

Partnership ("TMHP") is an agency with whom HHSC contracts to administer

aspects of the Medicaid program, including the prior authorization process.  See, *e.g.*,

*Koenning v. Suehs*, 2012 WL 4127956 at *3 (S.D. Tex. Sept. 18, 2012).  TMHP

makes an initial prior authorization determination in response to a request for an

item of DME.  When a request is denied, TMHP must send a notice of denial to the

claimant.  1 Tex. Admin. Code § 357.11(b).  HHSC also provides administrative

hearings to claimants who are denied items of DME, and the regulations governing

these hearings require hearing officers to sustain TMHP's denial if it is supported by

agency policy.  *Id.* § 357.23(e).

### 2. *Application*

The plaintiffs argue that the ceiling lift at issue in this case clearly meets Texas

Medicaid's definition of DME.  *See* Plaintiffs' Memorandum in Opposition to

Defendant's Motion for Summary Judgment ("Plaintiffs' Response") at 11-13 (docket

entry 48).  Consequently, they argue, HHSC's categorical exclusion of the lift violates

the *DeSario* letter's guidance, because the *DeSario* letter's criteria (referenced above)

are supposed to be applied to any individual request for an item of DME.  *Id.* at 9.  A

categorical exclusion thus violates the individualized inquiry the letter requires.  *Id.*

Furthermore, the plaintiffs argue, in prior case law, states' categorical exclusions of

items of DME have never been upheld as consistent with the Medicaid Act or the

*DeSario* letter's requirements.  *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgment ("Plaintiffs' Motion") at 2 (docket entry 40).

HHSC argues that the *DeSario* letter's requirements do not apply to ceiling lifts, because both State and Federal Medicaid guidance and policies show that ceiling lifts are considered to be "home modifications" and not DME.  *See* Defendant's Motion at 20.  Furthermore HHSC argues that, even if ceiling lifts are considered DME, the Texas policies sufficiently comply with the *DeSario* letter.  *Id.* at 20-21.

HHSC also contends that it cannot be in violation of the Medicaid Act's requirements where its categorical exclusion of a purported benefit (DME or not) is in accord with explicit and implicit guidance from CMS that FFP will not be available for that purported benefit.  *Id.* at 9, 18.  HHSC points out that the most recent explicit guidance it has received from CMS about ceiling lifts is that FFP is unavailable for them.  *Id.*  It also points out that CMS has implicitly accepted recent Texas plans that:  (1) categorically exclude ceiling lifts from the "home health benefit" portion of its Medicaid program, but (2) provide ceiling lifts to patients under 21 via the EPSDT program and to patients over 21 via Medicaid's waiver services provisions.  *Id.* at 2-6.

To this argument, the plaintiffs respond that HHSC is improperly imposing an "FFP assurance" standard on claimants in the prior authorization process.  *See* Plaintiffs' Response at 14.  In other words, the plaintiffs maintain, HHSC's argument

means a claimant will have the burden to assure HHSC that, for any requested item of DME, FFP is available. *Id.* This, the plaintiffs argue, is too great a burden for any claimant to meet in the prior authorization process. *Id.*

The court agrees that claimants ought not to be required to assure HHSC during the prior authorization process that FFP will be available for items they request. However, the court is of the opinion that this "FFP assurance standard" is not a necessary result of accepting HHSC's argument with respect to FFP availability for ceiling lifts. Rather, the court understands HHSC to be arguing that, where the state has explicit guidance that FFP will not be available for a particular item (DME or not), the state is not required by the Medicaid Act to provide such an item. Furthermore, since the state is not required to provide the item, a categorical exclusion is perfectly appropriate and consistent with the efficient administration of the state's Medicaid program.

In none of the "categorical exclusion" cases cited by the plaintiffs does a court address the argument being advanced by HHSC here. See, *e.g.*, *Koenning v. Suehs*, 2012 WL 4127956 at *17 (S.D. Tex. Sept. 18, 2012) (declaring that HHSC's categorical exclusion of powered wheelchairs with "standers" violated the Medicaid Act's "reasonable standards" provision); *Fred C. v. Texas Health and Human Services Commission*, 167 F.3d 537 (5th Cir. 1998) (upholding a district court's summary judgment in favor of a Medicaid claimant who argued that he must be provided with

an augmentative communicative device, because Texas Medicaid provided such

devices for patients under 21 years of age); *Hope Medical Group For Women v. Edwards*,

63 F.3d 418 (5th Cir. 1995), *cert. denied*, 517 U.S. 1104 (1996) (holding that

Louisiana's Medicaid restrictions on abortion funding, which would not allow for

Medicaid funding of abortions in cases of rape or incest, violated Title XIX); *Mitchell*

*v. Johnston*, 701 F.2d 337, 340-41 (5th Cir. 1983) (affirming the district court's

finding that Texas's cutbacks in Medicaid dental benefits for children violated Title

XIX); *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980) (holding that a Georgia

Medicaid policy excluding funding for transsexual surgery would be appropriate if the

policy was meant to exclude experimental procedures and if transsexual surgery was

determined to be such an experimental procedure).  In none of these cases did a state

claim that it had explicit guidance that FFP would not be available for the benefit in

question.  In that respect, this case appears to present a question of first impression,

at least in this circuit.

Neither party cites it, but this court finds the rule articulated in *Harris v.*

*McRae* to be dispositive with regard to this question.  See generally *Harris v. McRae*,

448 U.S. 297 (1980).  There the Court considered whether Title XIX required a

participating state to pay for medically necessary abortions for which federal

reimbursement was unavailable under the Hyde Amendment.  *Id.* at 301.  The Court

determined that the scheme of cooperative federalism Congress enacted in the

Medicaid Act evinced no intent to require a participating state to shoulder the full costs of any health service provided in a state Medicaid plan. *Id.* at 308.  In addition, the Court found that the Hyde Amendment's legislative history contained no indication that Congress intended to shift the entire cost of certain medically necessary abortions to participating states. *Id.* at 310.  As the Court stated:

> The cornerstone of Medicaid is financial contribution by both the Federal Government and the participating State. Nothing in Title XIX as originally enacted, or in its legislative history, suggests that Congress intended to require a participating State to assume the full costs of providing any health services in its Medicaid plan. Quite the contrary, the purpose of Congress in enacting Title XIX was to provide federal financial assistance for all legitimate state expenditures under an approved Medicaid plan.

*Id.* at 308.

The most apparent difference between that case and this is that congressional intent not to provide funding for certain abortions via the Medicaid program was clearly expressed in the legislation at issue in *Harris*, *i.e.*, the Hyde Amendment.  *Id.* at 310.  Here, CMS, the agency charged with administration of the Medicaid statute, has expressed in its guidance to HHSC the view that funding is unavailable for certain items of DME (including ceiling lifts) via the Medicaid program.[4]  *See*

---

[4]     The guidance Texas Medicaid has received comes from a regional office of CMS that is apparently based in Dallas and serves Texas Medicaid. *See* Defendant's App. 1 at 7, 27-28.  In their response to the defendant's summary judgment motion, the plaintiffs point to a communication the plaintiffs themselves solicited from a "senior CMS Central Office official" that indicates that FFP might be

(continued...)

- 25 -

Defendant's App. 1 at 7, 13, 26, 27-28.  Whether or not that view of congressional intent is correct is, of course, open to question.  It is reasonable, however, for HHSC to rely upon the guidance of CMS as a correct expression of congressional intent to limit funding for certain items of equipment that might otherwise meet the State's definition of DME.  The plaintiffs' dispute is thus not properly with HHSC, whose reliance on CMS guidance is reasonable.  *See* Defendant's Motion at 17-18.  The dispute is with CMS, over whether or not its guidance offers a reasonable interpretation of the extent of the Medicaid Act's coverage of certain items of DME.

The rule the court employs is this:  where a State has explicit guidance from CMS that FFP will not be available for an item of DME, that State acts reasonably when it categorically excludes such an item from coverage in its Medicaid policies.  This is because, as the Supreme Court has held, the Medicaid Act never requires States to shoulder the full burden of the cost of services provided under the State's Medicaid plan.  See *Harris*, 448 U.S. at 308.

---

[4](...continued)
available for items such as ceiling lifts.  *See* Plaintiffs' Response at 16, and Plaintiffs' Appendix in Opposition to Defendant's Motion for Summary Judgment at 51-53 (docket entry 50).  At most, this communication reveals some internal disagreement at CMS on the extent of DME coverage under Title XIX.  Texas Medicaid, however, ought not to be required to search out the opinion of every CMS officer with respect to the availability of FFP for contested items of medical equipment.  It is entitled to rely on the guidance provided from its regional office, since -- from the briefs presented to the court -- that appears to be one of the normal procedures for obtaining opinions regarding the State plan's compliance with the Medicaid statute.

The court finds that Texas Medicaid's policy categorically excluding ceiling lifts from coverage does not conflict with the Medicaid Act's "reasonable standards" requirement, the "amount, duration, and scope" regulation, or the *DeSario* letter's guidance.  It is therefore not preempted by the Supremacy Clause.

F.  Due Process

The Fourteenth Amendment prevents States from depriving citizens of property without due process of law.  U.S. Const. Amend. XIV § 1.  This has been termed "procedural due process."  See, *e.g.*, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  As an initial matter, the plaintiff bringing a procedural due process claim in a benefits case like this one must show he or she has a property interest in the benefit that has been denied.  See *id.*  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

The plaintiffs here cannot make out a procedural due process claim, for the simple reason that they cannot show "a legitimate claim of entitlement" to the ceiling lift which was denied them by HHSC.  The contours of the plaintiffs' property interests under the Medicaid Act are clarified by CMS in its guidance to HHSC that FFP is not available for ceiling lifts.  This guidance shows that ceiling lifts do not fall within the scope of the services provided by the statute.  There can be no "legitimate

claim of entitlement" to a benefit that the agency charged with administration of a benefit statute has determined is not within the ambit of that statute.

For the same reason, the plaintiffs' due process claims under the Medicaid Act's "fair hearing" provision fail.  That provision, by its terms, applies only to an individual "whose claim for medical assistance under the plan is denied."  Here, the plaintiffs' claims for ceiling lifts are not claims "under the plan."  Indeed, CMS has provided guidance to HHSC that suggests that ceiling lifts are outside the plan. Thus, the plaintiffs in this case have no claim to which the Medicaid Act's fair hearing provision applies.

Even were the court to conclude that these plaintiffs did have a property interest,[5] it would also conclude that these plaintiffs have received all the process that was due, consistent with *Goldberg v. Kelly*'s mandate.  *Goldberg* requires both notice and a meaningful opportunity to be heard.  *Goldberg*, 397 U.S. at 267-68.  The plaintiffs here do not dispute that they were given notice of the denial of their claim for benefits.  Rather, they claim they had no meaningful opportunity to be heard, because HHSC's hearing officer was not required to consider evidence of exceptional circumstances that would warrant a departure from Texas Medicaid policy for their individual requests.  What the plaintiffs fail to point out is that Texas provides for

---

[5]    It is of course true that potential plaintiffs have a property interest in Medicaid benefits that fall within the ambit of the statute.  See, *e.g.*, *Ladd v. Thomas*, 962 F. Supp. 284, 289 (D. Conn. 1997).

state judicial review of the lawfulness of a policy as applied to a Medicaid beneficiary whose claim has been denied in accord with such policy. *See* Defendant's Motion at 24; 1 Tex. Admin. Code § 357.703; Tex. Gov't. Code § 2001.174(2)(D).

What process is due depends on the circumstances of each case. See *Mathews*, 424 U.S. at 334. In *Goldberg*, the fact that a welfare recipient depends for his or her continued existence on the uninterrupted provision of benefits weighed in favor of the Court demanding a robust pre-termination hearing. See *Goldberg*, 397 U.S. at 264. Here, the plaintiffs' current benefits have not in any sense been terminated or reduced by TMHP's decision to deny their claim based on the policy that the ceiling lift is not a benefit of Texas Medicaid. Rather, the plaintiffs' claims for this extra benefit were denied consistent with HHSC's reasonable policy. The plaintiffs were provided notice of the denial and their right to a hearing, and a hearing was held. Moreover, if the plaintiffs were dissatisfied with Texas Medicaid's policy as applied to them, they had the opportunity to challenge its lawfulness using the mechanism of state judicial review. Under the circumstances, the plaintiffs have been provided with all the process that was due them.

## III. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is **GRANTED**. The plaintiffs' motion for summary judgment is **DENIED**.

Judgment will be entered for the defendant.

**SO ORDERED**.

March 13, 2013.

_____

**A. JOE FISH**
**Senior United States District Judge**